UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Donald R. Wilson, Jr.,

    Plaintiff,

v.

Liebel Holdings III, LLC and Steven E. Liebel,

    Defendants.

No. 09 C 5448
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a complaint for a declaratory judgment regarding losses related to the yacht STARS & STRIPES. Plaintiff filed this complaint in the Circuit Court of Cook County, Illinois, and Defendants removed the case to this Court. Defendants now move to dismiss this case for a lack of personal jurisdiction, or alternatively, to transfer or stay this case. For the following reasons, Defendants' motion to dismiss is granted.

## I. FACTUAL BACKGROUND

On May 20, 2008, Liebel Holdings III ("Liebel Holdings") and Convexity Racing, LLC ("Convexity") entered into a Yacht Charter Party Agreement ("Charter Agreement") for the charter of the high performance sailing yacht STARS & STRIPES ("Yacht"). Convexity is an Illinois limited liability company and Plaintiff Donald R. Wilson ("Wilson") is its sole member. The Charter Agreement was for hire of the Yacht from May 20, 2008 to August 15, 2008 and contemplated its participation in two races, the Port Huron to Mackinac race and the Chicago to Mackinac race. The Charter Agreement stated that "Practice may also occur[.]"

Possession of the Yacht took place in Bradenton, Florida and the Charter Agreement stated that after the Yacht was removed from its berth in Bradenton, Florida, any breakdown or damage caused to the Yacht would be the responsibility of the Charterer. Furthermore, full control of the operation and management of the Yacht was given to the Charterer, although the Charter Agreement acknowledged that "the Owner and/or Owner's friends or existing crew members may sail with the Yacht and Charterer on one or more races and delivery trips. . . Charterer retains total and absolute control and responsibility for the Yacht[.]" Furthermore, the Charter Agreement states that venue shall lie exclusively in the city and state of the owner's residence and that any controversy or claim arising out of the Charter Agreement shall be settled by arbitration.

Concurrent with the Charter Agreement, the parties also entered into an Indemnification Agreement whereby Wilson agreed to indemnify Liebel Holdings for certain events or damage in connection with the Yacht's charter. While the Charter Agreement is between Liebel Holdings and Convexity Racing, the Indemnification Agreement is between Liebel Holdings, Steven Liebel and Donald Wilson. The Indemnification Agreement states that "LH III has requested that Wilson indemnify LH III and Liebel for certain events which may occur in connection with the chartering the [sic] Yacht pursuant to the Charter Agreement." The Indemnification Agreement contains a choice of law provision stating that the agreement shall be governed in accordance with Illinois law.

Prior to the Charter Agreement, Convexity conducted a two-day trial sail in Florida to determine whether or not it would be interested in chartering the vessel for the Mackinac Island races. Convexity initiated contact with Defendants in regard to the initial trial Yacht charter, and

both a Trial Charter Agreement and Trial Indemnification Agreement were executed accordingly. During both days of the trial, the Yacht experienced equipment failures. Over the following months, the parties exchanged emails discussing the progress of repairs and negotiating the terms of what would become the Charter and Indemnification Agreements. The Yacht continued to experience equipment failures prior to the races.

The Yacht arrived in Chicago at the end of May 2008 and soon required repairs. Plaintiff alleges that on June 12, 2008 Defendant Liebel arrived in Chicago to race with Plaintiff in the National Offshore One Design ("NOOD") race and to practice on the Yacht. Although Defendant Liebel admits that he did in fact race in the NOOD with Wilson, he states in his affidavit that the sailing vessel was named CONVERGANCE. Furthermore, Liebel states in his affidavit that while in Chicago, the Yacht STARS & STRIPES was not assembled, nor did he sail onboard that Yacht during his visit. Indeed, Wilson does not assert in his own affidavit that Liebel was present in Illinois when equipment failures required repair in Chicago. Liebel did not arrange for any repairs to be made in Chicago but instead merely paid the invoice submitted to him by Plaintiff. Payment was made to Blair Ross, a Chicago boat repair service.

On July 10, 2008, the Stars & Stripes set out with a twelve-member crew on the Port Huron leg of the Mackinac Island race. At approximately 2:00 a.m. on July 11, the Yacht dismasted as it neared Presque Isle, Michigan.

The damage to the boat is extensive, and Defendants assert that Convexity is responsible for repairs under the Charter Agreement, or that Wilson is responsible under the Indemnification Agreement. On June 9, 2009, Wilson filed his complaint for declaratory relief in the Circuit Court of Cook County. Plaintiff seeks a judgment declaring that the losses at issue did not "arise

3

out of or result from Convexity's use of the Stars and Stripes" within the meaning of the Indemnification Agreement. On July 31, 2009, Liebel Holdings filed a Petition to Compel Arbitration in the United States District Court, Middle District of Florida.

## II. STANDARD OF REVIEW

The plaintiff has the burden of demonstrating the existence of personal jurisdiction over the defendant. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). In order to defeat a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie case showing that personal jurisdiction exists. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002). In reviewing the complaint and affidavits, I must read the complaint liberally and draw all reasonable inferences in favor of the plaintiff. *Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir.1999). Furthermore, when faced with conflicting evidence, I must resolve factual disputes in the plaintiff's favor. *RAR,* 107 F.3d at 1275.

## III. DISCUSSION

A district court exercising diversity jurisdiction may only exercise personal jurisdiction over a defendant if an Illinois state court would have such jurisdiction. *RAR*, 107 F.3d at 1275. The Illinois long-arm statute subjects a nonresident defendant to jurisdiction in Illinois in several circumstances, such as if the nonresident has conducted a business transaction in Illinois, and the plaintiff's claim arises from that specific act. 735 IL. COMP. STAT 5/2-209(a). The statute also includes a "catch-all" provision permitting a court to exercise jurisdiction on any basis permitted by the Illinois Constitution or the United States Constitution. 735 IL. COMP. STAT 5/2-209 (c); *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 760-61 (7th Cir. 2008).   .

4

When contacts between the defendant and Illinois are sufficient to satisfy due process under the state and federal constitutions, no further inquiry is necessary to satisfy the statute. *Bombliss v. Cornelsen*, 824 N.E.2d 1175, 1179 (Ill.App.Ct. 2005). Federal due process concerns are satisfied if a defendant has sufficient "minimum contacts" with the forum state, such that maintaining an action there comports with "traditional notions of fair play and substantial justice." *Id*. at 113 (internal citation omitted). Moreover, the defendant should "reasonably anticipate being haled into court" in the forum as a result of these minimum contacts. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). The Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir.2003). Therefore, a single inquiry into federal due process concerns will satisfy this jurisdictional analysis. See *Hyatt,* 302 F.3d at 715; *Abbott Labs., Inc. v. BioValve Techs., Inc.,* 543 F.Supp.2d 913, 919 (N.D.Ill.2008).

The minimum contacts standard is dependent upon whether the forum asserts specific jurisdiction or general jurisdiction.[1] *Adams v. Harrah's Maryland Heights Corp.*, 789 N.E.2d 436, 440 (Ill.App.Ct. 2003). Specific jurisdiction, the jurisdiction asserted in this case, applies to a defendant when the suit arises out of or relates to the defendant's contacts with the forum. *Adams*, 789 N.E.2d at 749. When specific jurisdiction over a non-resident is asserted, due process is satisfied "if the defendant has 'purposefully directed' his activities at residents of the

---

[1] When personal jurisdiction is exercised over a defendant in a suit not related to the defendant's contacts with a forum, a State is said to be exercising "general jurisdiction." *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, n3 (7th Cir. 2008). General jurisdiction is appropriate when a defendant has "continuous and systematic" contacts with the forum state. *Id*. Plaintiff does not claim that general jurisdiction is applicable here.

state *and* the suit involves alleged injuries that 'arise out of or related to' those activities." *Kostal v. Pinkus Dermatopathology Laboratory, P.C.,* 827 N.E.2d 1031, 1039 (Ill.App.Ct. 2005) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (emphasis in original). The defendant's contacts must not be random, but rather, its conduct must be such that it should "reasonably anticipate being haled into court there." *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d at 761.

Plaintiff asserts that specific jurisdiction over Defendants arises from a contract, the indemnity agreement. A contract between a state resident and a non-resident does not automatically establish sufficient minimum contacts for personal jurisdiction. *Citadel Group Ltd.*, 536 F.3d at 761. When specific jurisdiction arises out of a contract, a court must consider "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Group Ltd.*, 536 F.3d at 761 (*quoting Burger King*, 471 U.S. at 479). When evaluating these factors, the district court may consider: (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the contract was to take place; and (4) where the contract was negotiated. *Id*. at 762. A choice of law provision alone, while relevant, is insufficient to provide a basis for jurisdiction. *Bolger v. Nautica Intern. Inc.*, 861 N.E.2d 666, 671 (Ill.App.Ct. 2007).

Here, the parties do not dispute that Convexity initiated the inquiry regarding the initial trial charter, that Convexity sea tested the Yacht in Florida or that negotiations were conducted electronically from both Florida and Illinois via email. It is also undisputed that the Yacht was collected in Bradenton, Florida and that it was contracted to sail in Illinois and Michigan.

6

A. <u>The Indemnification Agreement is Related to the Charter Agreement</u>.

Plaintiff contends that he is not a party to the Charter Agreement and that Wilson did not initiate or solicit the Indemnification Agreement on his own or on Convexity's behalf. Therefore, because I may only consider "dealings between the parties in regard to the disputed contract," in my analysis, Plaintiff argues that I should only consider the Indemnification Agreement. *Heller Financial, Inc. v. Ohio Savings Bank*, 158 F.Supp. 2d 825, 829 (N.D. Ill 2001). Plaintiff, however, fails to recognize that the Charter Agreement underlies the Indemnification Agreement as stated in Recitals A and C. Furthermore, Wilson himself participated in negotiations regarding both the Charter Agreement and the Indemnification Agreement. Additionally, Wilson states in his affidavit and in his complaint that the Charter Agreement and Indemnification Agreement are "concurrent." Indeed, to ignore the Charter Agreement would be to ignore "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]'" *Citadel Group Ltd.*, 536 F.3d at 761 (*quoting Burger King*, 471 U.S. at 479). Accordingly, I decline to consider the Indemnification Agreement exclusively in my jurisdiction analysis.

B. <u>Defendants Do Not Have Minimum Contacts with Illinois Sufficient for This Court to Exercise Personal Jurisdiction Over Them</u>.

When specific jurisdiction arises out of a contract, a court must consider "the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Group Ltd.*, 536 F.3d at 761 (*quoting Burger King*, 471 U.S. at 479). The court may consider factors such as who initiated the transaction, where the contract was entered

7

into, where the performance of the contract was to take place, and where the contract was negotiated in rendering its decision. *Id*. at 762.

Defendants rely on *Bolger v. Nautica Intern. Inc.* to support their argument that Defendants' contacts with Illinois are insufficient to establish personal jurisdiction. In *Bolger*, an Illinois resident brought an action against a Florida seller for breach of contract. The facts of *Bolger* are indeed similar to the case at hand. In *Bolger*, the plaintiff contacted the Florida seller regarding that sale of a boat. *Bolger*, 861 N.E.2d at 667-68. The plaintiff traveled to Florida to see the boat, and communications regarding price and delivery were made via facsimile and email. *Id*. The contract indicated that the agreement would be deemed executed in Florida and that the contract would be construed and interpreted in accordance with Florida law. *Id*. at 668. After delivery, the plaintiff alleged that the boat failed to meet his needs. *Id*. Subsequently, a number of emails were exchanged and various solutions were proposed. *Id*. Finally, the parties entered into a settlement agreement. During the negotiations regarding the settlement, emails and faxes were exchanged between the parties. *Id*. The defendant was unable to fulfill its obligations under the settlement agreement, and the plaintiff brought suit. *Id*.

The plaintiff in *Bolger* argued that necessary minimum contacts were established because the defendant had a systematic presence in Illinois through the sale of its boats, correspondence sent to Illinois, and the defendant's knowledge that plaintiff was a resident of Illinois. Furthermore, the plaintiff argued that the court's focus should be on the settlement agreement, and not the initial contract. The plaintiff however admitted that neither party could be said to have initiated the settlement agreement. *Id*. at 672.

The *Bolger* court held that the defendant lacked the necessary minimum contacts with Illinois to support personal jurisdiction because it did not avail itself of the benefits and protections of Illinois law. Instead, the plaintiff initiated the purchase of the boat, traveled to Florida in furtherance of making the purchase, and entered into a contract containing a choice of law provision stating that the contract was deemed executed in Florida. *Id*. Additionally, the contract contemplated performance in Florida, delivery took place in Florida, and the defendant never entered Illinois nor did it ever contemplate doing so. *Id*. Furthermore, the court rejected the plaintiff's argument that the settlement agreement, and not the initial agreement, should be the focus of jurisdictional analysis because the settlement arose out of the plaintiff's initial purchase agreement, and did not contemplate "any sort of presence or performance" by the defendant in Illinois. *Id*. Instead, the settlement agreement contemplated performance in Florida (the defendant agreed to build the plaintiff a new boat in Florida). *Id*.

Defendants argue that *Bolger* is analogous to this case. First, Wilson initiated the transaction underlying the dispute in this matter when one of his agents contacted Defendants about chartering the Yacht. Next, Defendants argue that some negotiations over the terms of the Charter and Indemnification Agreements took place in Florida, with the remaining details resolved via email. As held in *Bolger*, Defendants' email communications to Wilson while in Illinois are insufficient to demonstrate that Defendants purposfully availed themselves to jurisdiction of Illinois courts. Finally, the performance rendered by Defendants under the Charter Agreement was given in Florida. Defendants assert that this case arises from Wilson's alleged breach of the Charter Agreement, and there can be no performance under the Indemnification Agreement until the dispute under the Charter Agreement has been resolved. Furthermore,

9

Defendants argue that as this suit seeks to rescind indemnification, there has been no performance under the Indemnification Agreement.

Plaintiff asserts that *Bolger* would only be applicable if the current dispute arose under the Trial Charter Agreement. Instead, Plaintiff argues that *E.A. Cox Co. v. Road Savers Intern. Corp.*, 648 N.E.2d 271 (Ill.App.Ct. 1995), a case distinguished by the *Bolger* court is more applicable.

In *E.A. Cox*, a buyer brought suit against a nonresident seller alleging breach of contract. In that case, the plaintiff called the defendant and requested quotes for two pieces of equipment. *Id*. at 273. Price negotiations continued between the parties, and four of plaintiff's employees traveled from Illinois to Michigan to inspect the equipment. *Id*. at 274. The parties then executed an agreement in Michigan. *Id*. Included in the agreement was the provision that technicians from the Michigan defendant would travel to Illinois for two full weeks to assist the plaintiff's operators with the machines and the routine maintenance that they would require. *Id*. One machine was picked up in Michigan. *Id*. Because the defendant did not have a particular piece of equipment in stock, it borrowed a second machine and delivered it to Illinois. *Id*.

The court in *E.A. Cox* focused its inquiry on the defendant's activities within the state of Illinois. Although the plaintiff had solicited the defendant and the agreement was executed in Michigan, the court found that jurisdiction over the defendant was proper. *Id*. at 276. The court's reasoning was based on the defendant's activities within the state of Illinois. *Id*. Because the defendant had entered into an agreement with an Illinois resident "that contemplated part performance in this state [Illinois]" the court found jurisdiction proper. *Id*. Indeed, the contract entered into by the defendant required partial performance in Illinois, and accordingly, the defendant entered the state of Illinois in furtherance of its contractual obligations. *Id*. at 276.

Specifically, the defendant entered Illinois to deliver equipment, sent employees to Illinois, and performed repairs on the equipment while in Illinois. *Id*. The court found these actions within Illinois sufficient to support jurisdiction because the defendants' contacts with Illinois were sufficient to reasonably anticipate being called into Illinois' jurisdiction. *Id*.

Plaintiff argues that this case is analogous to *E.A. Cox* because Defendants purposefully availed themselves of the benefits of this forum when: (1) they solicited an indemnity agreement; (2) the indemnity agreement related to the charter of a yacht sailing in Illinois; (3) payment of indemnity would be made from Illinois; (4) the duty to defend under the agreement contemplated potential third-party claims arising during use of the boat in Illinois and would require defense of claims in Illinois; (5) the parties incorporated a choice of law provision stating that the agreement was governed by Illinois law; (6) Liebel traveled to Illinois to practice with Convexity's crew; and (7) Defendants accepted responsibility for failure of the yacht in Illinois during practice sessions.

As noted *supra*, I do not consider the Indemnity Agreement completely independent of the Charter Agreement. The Seventh Circuit has stated that when determining jurisdiction prior to negotiations, terms of the contract and the parties' actual dealings must be considered. *Purdue Research Foundation v. Sanofi-Synthelabo, SA*, 338 F.3d 773, 781 (7th Cir. 2003) (*citing Burger King*, 471 U.S. at 478). Here, looking exclusively at the indemnity agreement, without any consideration of the Charter Agreement, would be improper because the Indemnification Agreement arose out of the Charter Agreement. Furthermore, the *Bolger* court's discussion of multiple agreements is instructive, although here, unlike *Bolger*, the Charter Agreement and Indemnification Agreement were made concurrently. However, just as the settlement agreement in *Bolger* arose out of the initial purchase agreement, here too, the Indemnification Agreement

11

arose out of the Charter Agreement and should be considered. I therefore consider both the Charter Agreement and the Indemnification Agreement in my analysis.

Plaintiff's reliance on *E.A. Cox* is somewhat misplaced. In *E.A. Cox* the court found it significant that the defendant entered into a contract that required part performance in Illinois, and then subsequently entered the state to fulfill its contractual obligations. *E.A. Cox*, 648 N.E.2d at 276. Here, neither the Indemnification Agreement nor the Charter Agreement contemplate any partial performance in Illinois.

Although Plaintiff argues that Defendants, through their right to indemnification, contemplated availment of Illinois law, he fails to show any instance of a required contractual part performance in Illinois nor any acts taken within the state in satisfaction of such contractual obligations. Furthermore, while Plaintiff asserts that Liebel's trip to Illinois should support a finding of personal jurisdiction, the Yacht was not even assembled when Liebel was in Chicago and he did not sail onboard the Yacht while in Illinois. Although Liebel's trip to Illinois did involve sailing with Wilson on the Yacht CONVERGANCE in the NOOD race, neither CONVERGANCE nor NOOD are related to the Charter Agreement or the Indemnification Agreement. As discussed *supra,* when specific jurisdiction over a non-resident is asserted, due process is satisfied "if the defendant has 'purposefully directed' his activities at residents of the state *and* the suit involves alleged injuries that 'arise out of or related to' those activities." *Kostal*, 827 N.E.2d at 1039 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (emphasis in original). In this case, the injuries alleged in the suit did not arise out of or relate to Liebel's trip to Illinois.

Even when considering the Charter Agreement's provisions regarding Liebel's involvement with the Yacht during the charter, it is clear that the Charter Agreement did not

12

require any partial performance in Illinois. In the Charter Agreement, full control of the operation and management of the Yacht was given to Plaintiff. Although the Charter Agreement stated that "the Owner and/or Owner's friends or existing crew members may sail with the Yacht and Charterer on one or more races and delivery trips" it also explicitly indicated that the "Charterer retains total and absolute control and responsibility for the Yacht[.]" This provision in no way requires a part performance in Illinois as articulated in *E.A. Cox*.

Regarding the issue of who initiated the Indemnification Agreement, the parties are in disagreement. Liebel admits in his affidavit, however, that because he was concerned that Convexity was merely a shell corporation, he asked for assurances that if the Yacht was damaged while in Wilson's possession, he would pay for the damages. In response to Liebel's concerns, Wilson proposed an indemnification agreement drafted by his lawyer. As the Indemnification Agreement was drafted to satisfy Liebel's concerns, I find that Liebel initiated the Indemnification Agreement. However, as in *Bolger*, the Indemnification Agreement cannot be viewed in a vacuum. The Indemnification Agreement arose out of the Charter Agreement. Indeed, while Wilson does not dispute that he initially made contact with Defendants, he contends that Liebel aggressively initiated the Charter Agreement. Regardless of any persuasive techniques or assurances Liebel may have given Wilson to secure the Charter Agreement, the undisputed fact remains that Plaintiff initiated the transaction with Defendants. Because I find that each party bears responsibility for initiating certain transactions, I do not find this a persuasive factor in my jurisdiction analysis.

Finally, Plaintiff provides no case law to support its contention that an indemnification agreement alone is sufficient to support a finding of personal jurisdiction. After considering the parties' negotiations, their contemplated consequence, the terms of the contract as well as their

course of dealing, I find that Defendants do not have minimum contacts sufficient to establish personal jurisdiction in Illinois. Although I recognize that the Indemnification Agreement agrees to the use of Illinois law, a choice of law provision alone, while relevant, is insufficient to provide a basis for jurisdiction. *Bolger*, 861 N.E.2d at 671.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted. Because I find that this Court lacks personal jurisdiction over Defendants, I do not reach Defendants' request for transfer or stay.

ENTER:

*[signature: James B. Zagel]*
James B. Zagel
United States District Judge

DATE: February 5, 2010